IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**<br>**ex rel., R. MICHAEL NELSON,** | )<br>)<br>) | **CASE NO. 4:04CV3139** |
| **Plaintiff,** | )<br>) | |
| | ) | **MEMORANDUM** |
| vs. | )<br>) | **AND ORDER** |
| **BIOLINK PARTNERS, a Foreign**<br>**Corporation, and ALEX BONNER** | )<br>)<br>)<br>) | |
| **Defendants.** | ) | |

This matter is before the Court on the Defendants' Motion for Summary Judgment Regarding Original Source (Filing No. 95). The matter has been briefed, and the Court has considered the evidence submitted. (Filing Nos. 97 and 102). For the reasons stated below, the Defendants' motion will be denied.

### FACTS

The Plaintiff, the United States of America, by its relator, R. Michael Nelson ("Nelson") rightly observes that the Defendants' brief in support of their motion does not comply with NECivR 56(a)(1) and (2). Accordingly, Nelson's response cannot comply with NECivR 56(b)(1), and the Court's task of attempting to sort out disputed and undisputed facts is made more difficult. Although the Defendants' reply brief contains a statement of allegedly undisputed material facts in a belated attempt to comply with NECivR 56(a)(1) and (2), the inclusion of such a statement in a reply brief does not serve the intended purpose of the rule, because it follows rather than precedes the response of the non-moving party.

Nevertheless, I will give a general summary of the factual allegations that lead me to conclude that the Plaintiff has met his burden of establishing facts by a preponderance of the evidence to demonstrate that the Court has subject matter jurisdiction.

Nelson is the owner, inventor, and holder of a patent on a device and/or process that completes rapid analysis of human blood or DNA. He refers to the apparatus as the "PCR Turbo Jet" or "PCRJet". Nelson and his company, Megabase Research, worked for a time with the Defendants Alex Bonner and Bonner's company, Biolink Partners ("Biolink"), in a partnership or joint venture arrangement to develop the scientific apparatus. Their working relationship ended in the fall of 2001. At that time, Nelson "learned that [Bonner] claimed to be a co-author of patent documents pertaining to the PCRJet. This was a false statement." (Affidavit of R. Michael Nelson, Filing No. 102, Ex. 2, ¶ 8). Nelson notified the National Institutes of Health ("NIH"), a division of the U.S. Department of Health and Human Services, that Bonner "was presenting false information to the NIH." (*Id.*). Nelson filed this action on March 5, 2004.

Nelson alleges that Bonner and Biolink violated the False Claims Act, 31 U.S.C. §§ 3729 to 3733 ("FCA"), because they received federal grant funds from various federal government agencies, including the NIH, based on false claims or fraudulent information. Nelson contends that Bonner and Biolink submitted Nelson's drawings, plans, schematics, and other documents to the government, claiming that such intellectual property was their own, and falsely represented that Nelson's employees were working for Bonner and Biolink, thereby obtaining grant funds. An investigation conducted by NIH revealed that Bonner did submit grant applications to NIH that incorrectly identified him as the co-author of a patent application, and that Biolink received $84,195 from NIH for the period of August

1, 1999, through January 31, 2000; $508,197 for the period of August 1, 2001, through July 31, 2002; and $370,018 for the period of August 1, 2002, through July 31, 2003. (Letter from Suzanne J. Servis, Director of Program Integrity, to Dr. Judith Greenberg, Director, National Institute of General Medical Sciences, NIH, dated February 21, 2003, Filing No. 97-5, hereafter "NIH Memo"). The NIH investigation also revealed that any false statements in the grant applications were not "material" and would have had no bearing on the awards. (*Id.*, p.2). The HHS Office of the Inspector General declined to pursue the matter (*id.*), and the United States declined to intervene in this action. (Filing No. 9)

For purposes of their Motion for Summary Judgment, Bonner and Biolink do not deny that they made false claims or provided fraudulent information on the grant applications. They assert, however, that Nelson was not the original source of the allegations of fraud, and that the Court, therefore, lacks jurisdiction to hear the case under 31 U.S.C. § 3730(e)(4)(A). Bonner and Biolink note that the allegations of fraud were publicly disclosed before Nelson filed this action, and allege that Nelson's knowledge of the alleged fraud came from documents supplied by the NIH.

Nelson acknowledges that he wrote to the NIH and supplied it with basic facts and allegations that led to the NIH investigation, and that he sent certain e-mails to third parties related to his claims. He contends, however, that it was his personal knowledge of certain facts that led to the allegations, and that he was and remains the "original source" of the allegations as defined in 31 U.S.C. § 3730(e)(4)(B).

### SUMMARY JUDGMENT STANDARD

In general, "[s]ummary judgment should be entered only if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine

3

issue of material fact and the moving party is entitled to judgment as a matter of law. F.R. Civ. P. 56(c)." *Nuzum v. Ozark Automotive Distributors, Inc.*, 432 F.3d 839, 842 (8th Cir. 2005).  If the movant can show there is no issue as to any material fact the non-movant must "set forth facts showing there is a genuine issue for trial."  Fed.R.Civ.P. 56(e); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). " *Reproductive Health Services of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 429 F.3d 803, 805 (8th Cir. 2005).

Because the Defendants have challenged the Court's subject matter jurisdiction, however, it is the Plaintiff's burden to establish facts to support subject matter jurisdiction by a preponderance of the evidence.  See, *e.g., Altimore v. Mount Mercy College*, 420 F.3d 763, 768 (8th Cir. 2005); *Schmidt v. United States*, 901 F.2d 680, 683 (8th Cir. 1990).

## DISCUSSION

The False Claims Act provides that any person who knowingly presents or causes to be presented to an officer or employee of the United States Government a false or fraudulent claim for payment or approval, or knowingly makes or uses a false record or statement to get a false or fraudulent claim paid or approved by the Government, is liable to the Government for a civil penalty of $5,000 to $10,000 and treble damages.  31 U.S.C. § 3729(a).  Private persons may bring civil actions in the name of the Government for violations of § 3729.  31 U.S.C. § 3730(b).  When such an action is pursued successfully by a private person in the name of the Government, the person may receive reasonable expenses, attorney's fees, costs, and 25 to 30 percent of the civil penalty and damages. 31 U.S.C. § 3730(d)(2).

The False Claims Act further provides: "No court shall have jurisdiction over an action under this section based on the public disclosure of allegations or transactions in a[n] . . . investigation . . . unless . . . the person bringing the action is an original source of the information."  31 U.S.C. § 3730(e)(4)(A).  "For purposes of this paragraph, 'original source' means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information."  31 U.S.C. § 3730(e)(4)(B).

The United States Court of Appeals for the Eighth Circuit has adopted a three-part test to determine whether a person bringing an action under the False Claims Act is an original source: "(1) Have allegations made by the relator been 'publicly disclosed' before the qui tam suit was brought?  (2) If so, is the qui tam suit 'based upon' the public disclosure?  and (3) If so, was the relator an 'original source' of the information on which the allegation was based?"  *U.S. Ex Rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003), quoting *Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1043 (8th Cir. 2002).  "Jurisdiction exists only if the answer to one of the first two questions is 'no' or the answer to the third question is 'yes.'"  *Allina Health Sys.,* 276 F.3d at 1042.  The central issue is whether a realtor has direct knowledge of the facts underlying the lawsuit.  *Stoltz*, 327 F.3d at 674.  A relator has direct knowledge when he "sees it with his own eyes."  *Id.*  "The False Claims Act is intended to encourage individuals who are either close observers or involved in the fraudulent activity to come forward, and is not intended

to create windfalls for people with secondhand knowledge of the wrongdoing." *Id.*, citing *Hays v. Hoffman*, 325 F.3d 982, 986-87 (8th Cir. 2003).

"A court reaches the original source question only if it finds the plaintiff's suit is based on information that has already been publicly disclosed." *United States ex. rel. Barth v. Ridgdale Electric Inc.*, 44 F.3d 699, 703 (8th Cir. 1995). Evidence before the Court indicates that Nelson's accusations against Bonner and Biolink were disclosed to the NIH in the fall of 2001, and to other third parties by e-mails beginning as early as October of 2001. (Filings No. 97-5 and 97-6). A suit is based upon a public disclosure whenever the allegations in the suit and in the disclosure are the same, regardless of where the relator obtained his information. *Allina Health Sys.*, 276 F.3d at 1045-47. So, the answer to the first two of the three necessary inquiries is "yes." There also appears to be no dispute that Nelson did provide the information to the Government before filing his suit. The question, therefore, becomes whether Nelson was the "original source" of the information. In other words, did he have direct and independent knowledge of the information on which his allegations are based?

"'Independent knowledge' has been consistently defined as knowledge that is not dependent on public disclosure." *Barth*, 44 F.3d at 703, citing *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991). "'Direct' knowledge under the Act has been defined as knowledge 'marked by absence of an intervening agency.'" *Id.*, citing *United States ex rel. Springfield Terminal Ry. v. Quinn,* 14 F.3d 645, 656 (D.C. Cir. 1994). Collateral research and investigations do not establish direct and independent knowledge of the information on which the allegations are

6

based. *Id.* "[A] person who obtains secondhand information from an individual who has direct knowledge of the alleged fraud does not himself possess direct knowledge and therefore is not an original source under the Act." *Barth,* 44 F.3d at 703.

Bonner and Biolink place a great emphasis on statements made during Nelson's deposition to the effect that Nelson obtained knowledge of the alleged fraud from his review of NIH documents, and that he did not have firsthand knowledge of what Bonner and Biolink did or did not do. Nelson contends, however, that he did have firsthand knowledge that *he* was the owner and inventor of the PCR Jet; that *he* held a patent on the machine, its software and its working processes; that *he* had prepared certain drawings, plans, schematics, and other documents regarding the invention; and that *his* company, Megabase, employed certain employees. I consider Nelson's knowledge of such facts to be "direct" and "independent." Nelson then states that his review of NIH documents confirmed or corroborated his allegations that Bonner represented himself to be the designer and developer of the machine that Nelson invented and on which Nelson held the patent; that Bonner submitted Nelson's drawing, plans, schematics, and other documents to the government as if the intellectual property were Bonner's own; and that Bonner falsely represented that certain Megabase employees were working for him on the grant project.

The fact that Nelson reviewed NIH documents, and allegedly confirmed his suspicions of fraud when reading the content of the grant applications, does not preclude him from being an "original source" as defined in 31 U.S.C. §3730(e)(4)(B). "[T]o qualify as an original source, a relator does not have to have personal knowledge of all elements of a cause of action." *Allina Health* Sys., 276 F.3d at 1050, citing *Springfield Term. Ry. Co.*

7

*v. Quinn*, 14 F.3d 645, 656-57 (D.C. Cir. 1994).  "If the relator has direct knowledge of the true state of the facts, it can be an original source even though its knowledge of the misrepresentation is not first-hand."  *Id.*

## CONCLUSION

The Plaintiff has met his burden of establishing facts by a preponderance of the evidence to demonstrate that this Court has subject matter jurisdiction, in response to the Defendants' challenge based on the "original source" element of 31 U.S.C. §3730(e)(4)(A). Accordingly, the Defendants' Motion for Summary Judgment Regarding Original Source will be denied.

IT IS ORDERED:

1.  The Defendants' Motion for Summary Judgment Regarding Original Source, Filing No. 95, is denied.

DATED this 4th day of April, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge